Thank you for waiting. This case is 061188, Hydril Company v. Grant Prideco, L.P. Mr. Haas. If the court is aware of the two issues that are on appeal in this case and all fall into the same order, the briefs starting with the Walker Process Claim and then moving to the Path Claim. Folks, if you have any questions, I'm happy to discuss your questions on either topic at any time. I'm going to start with a question for you on the Walker Process Claim. Walker Process said you have to have fraud on the patent office, correct? And as I read your complaint, the alleged fraud on the patent office is not the making of any misstatements to the patent office, but the failure to disclose certain prior art. And that seems to me to be kind of a run-of-the-mill equitable misconduct claim. And I wonder whether you have properly alleged a Walker Process Claim here. Well, Judge Friedman, as I'm sure you're aware, that did not come up below and is not challenged in the penal court. As far as I remember, it means you have to have an affirmative misstatement made with the intention to deceive and the person has to be victimized by it. Now, inequitable misconduct, it's enough to show maybe that the examiner would have found it useful. I suppose you might have a situation where there was fraud in the sense that they knowingly concealed something which they believed were the result of a denial of a patent. And I believe that's actually what we've alleged, Judge Friedman, is that they knowingly concealed work that had been done in their own advertisements and in their own sales. It was within the scope of the claims that they were seeking at the patent office. And the further statement that if this material had been disclosed, the patent office would have turned down the application. That we actually specifically allege, Your Honor, in terms of saying that the patent office would not have allowed this patent if this material had been given to the patent office. And I can get you the paragraph for that. If you look at paragraph 43, which is on page 485 of the appendix, it says the 631 patent as issued would not have been granted to Grant and Prodco, and Grant and Prodco have not omitted from its disclosures such known information, including its own prior sales of covered technology. And my impression is that there's no case in our court, is there, that has gone that far as to say that a Walker process claim is established by failing to disclose? Judge Friedman, I'd actually point you to the facts of the Unitherm case itself. The key issue in the Unitherm case was that some of the employees of Unitherm had presented the very processes that ConAgra then went to the patent office and tried to claim. And ConAgra did not tell the patent office about the presentations, about their knowledge, about the use, all things they could have told the patent office but did not. And it was those failures or omissions to tell the patent office that were found in ConAgra to result in the fraudulent behavior. So I would say that the facts of ConAgra actually come to the situation you've outlined, where it was just so clear that they knew about it, it was in their own information, it was presented to their own inventor, that the omission could amount to a fraud. So I think that we have alleged a significant case of fraudulence there. I terminate the discussion on this. The Walker process claim is about direct competition, direct competition between Grant-Pryco and Hydro in selling drill pipe connectors. Simply put, if Grant-Pryco sells a drill pipe connector, Hydro loses the sale, and vice versa. What was important to the district court below, and the only basis the district court found dismissing the claim, was that Hydro itself did not have a reasonable application, reasonable apprehension of a lawsuit. That's important, because if you look at Unitherm, Unitherm never makes that limitation. Here's a good reason. That limitation is in declaratory judgment law, because there's a constitutional jurisdiction question when you have a declaratory judgment. There's a concern that there will be an advisory verdict. But this is a claim for money damages. There's no risk of an advisory verdict when a Walker process claim is being brought. It's just in the same sense of having perhaps a claim for money damages for a civil rights violation. But we have said, I think, have we not, that the standard is the same in the Walker process and in the DJ jurisdiction area with respect to reasonable apprehension. Yes, Judge Bryson, the standard is the same. The question of whether there is a reasonable apprehension. But that doesn't mean that the parties that you look at to determine whether there's a reasonable apprehension is the same. In fact, if you look at the facts of ConAgra, or the Unitherm ConAgra case, Unitherm itself never received a letter. But Unitherm was the plaintiff in the case. So in that case itself, it looked more at the broad enforcement against market participants, though using the standard of reasonable apprehension, as Unitherm said. Which means that the district court erred by only looking at whether Hydeville had a reasonable apprehension suit and should have analyzed whether Hydeville's customer, Atwood Oceanics, or Hydeville's distributor, OMSCO, had a reasonable apprehension suit. But wasn't the basis for saying no reasonable apprehension the fact that they didn't view this letter that was sent as really a threat of infringement's action? It was just telling them about their patent. Well, Judge Krugman, first, the district court never looked at the letter from the point of view of OMSCO or the point of view of Atwood Oceanics. All the district court said was that Hydeville did not have a reasonable apprehension suit. Secondly, on 12b6, of course, all reasonable inferences should be drawn in favor of Hydeville, that the commercial circumstances of receiving this letter were such that Atwood Oceanics or the distributor, OMSCO, could have felt a reasonable apprehension that they would be sued. And there are a number of reasons why this letter rises to that level. First, the letter was sent by outside intellectual property counsel. Secondly, the letter, while it didn't use the magic words of, you're infringing, basically said, if you claim you're not infringing, you have three weeks to give us the information about your product that proves it. Finally, the letter went to a particular transaction that had no license language. This was not a letter that came saying, do you want a license? It was a letter that identified a particular transaction and said, prove to me that that transaction does not infringe my patent. Under the circumstances where all inferences are drawn in Hydeville's favor, the commercial reality of this situation would be that Atwood Oceanics and the distributor, OMSCO, felt that this letter was accusing them of infringement and saying, if you go forward with this transaction without proving you don't infringe, we're going to try to stop you. Well, as I understand it, I'm looking at this material, page six of the district court's opinion, where it's saying, for example, the January 2-0 letter does not contain an explicit threat or other language which under the totality of the circumstances would create a reasonable apprehension on Hydeville's part that Grant Pritikow might sue it for patent infringement. I take it you're stressing the fact that the district court was referring to what Hydeville might anticipate rather than what Hydeville's customers might anticipate and what impact that might have on Hydeville. That's basically what you're arguing, but in reading it over, it seemed to me what the court was addressing was not the fact that the impact was not on Hydeville but on its customers, rather that this letter itself was not enough to create a threat, that the terms of the letter did not threaten a patent suit, it was just saying, this is what we have and you should know about it. Well, I only have one page to work with here, Your Honor, but what I can say is in discussing that letter, the court never discussed its impact on OMSCA or its impact on Aberdechian. It only referred to apprehension on Hydeville's part. And then in conclusion, at the bottom, the court said it is because Hydeville has failed to allege enforcement activity by Grant Pritikow, which would create an objectively reasonable apprehension that Grant Pritikow intended to enforce the 631 patent against Hydeville. On another point, you're contending that it's just the connectors, the connection to the market. Actually, we have two markets. I know you do, but are you still saying that you have standing in the finished pipe market as well? We believe we have as a potential entrant. You don't compete in that market in this country, do you? We compete in the sense of the Fifth Circuit requirement that we have the intention and the potential to do so. Is there a difference between the Fifth Circuit and our circuit on that? That question is a question of Fifth Circuit law under Unitherm. And under the Fifth Circuit in the cases we pointed out— This is a case that implicates pathologs, right? That's true. Unitherm says in such a case you use Federal Circuit law to look at whether immunity has been breached. But then you use the Regional Circuit law to look at issues such as the plaintiff's standing and the monopolization. And so in looking at whether there's a market here that's been monopolized, we would use Fifth Circuit law to look at that issue. And so in Fifth Circuit law— In Fifth Circuit law, you have to have the potential to enter the market and the intention to do so. And we have pledged that we have the potential, and we gave specific examples of how we've done it before, and that we have the intent to enter the market once the anti-competitive results of their actions can be dissipated. You've never sold, though, have you, in the domestic market? We have not sold in the domestic market. And how long have you been in business? About five years, fifty years? Hyville has been in business, I believe, for at least several decades. But this particular market did not come into being until only five or ten years ago. With regard to the other claim that's at issue— So is it speculative that you're going to be coming in, or— I would say that at the 1286 situation that we've made allegations that we were coming in, and those allegations can be tested in the way of any other allegation, with the evidence and on summary judgment and with depositions to determine whether it's speculative or not speculative. With regard to the remaining claim in the case, the patent claim, I would just point to the fact that the district court looked at one provision and never looked at more specific provisions that said that both parties intended to retain their patent rights, and on the basis of a general provision, rather than a specific provision, waived all of those patent rights. And Texas law specifically says that you should look at the agreement as a whole, and that the specific provisions are more important than the general. I'd like to reserve the rest of my time for rebuttal. All right. Mr. Boyce. May it please the Court, Bill Boyce, on behalf of F. W. Grant, prior to him. I'd like to begin with the Walker process claim as well, and submit to the Court that it should be affirmed, dismissal is proper, and the Court can approach it from a narrower perspective or a broader perspective, if it so wishes. The narrower perspective would be the one that the district court embraced, which is, regardless of the recipient of the letter, the letter it issued, the single enforcement activity that was alleged, the letter to a customer called Omsco, was not sufficiently indignative of any intent to enforce. Against anyone or against Hydra? Against anyone. Do you understand from the language that appears at page 6 that the district court is referring to the risk of a suit against others besides Hydra? I mean, I know the sentence following the sentence that I think Mr. Hawes quoted refers to others, but that refers to other letters. Similar letters. Similar letters, right. But it did seem to me as I read this opinion that the district court was focusing in on the concern that Hydra would have as opposed to the concern that one of the customers would have. Do you read it differently? I read it as being written broadly enough to encompass that this letter or similar letters are not sufficient to give rise to an apprehension of suit by anyone, whoever the recipient is. That's point one. Point two, I don't want to lose sight of the microchip case that this court identified prior to argument as bearing on this question of whether actions directed towards customers as opposed to direct competitors is sufficient. And I think to the extent that Hydra has tried to set up an argument that it is inappropriate to say that there must be some apprehension on Hydra's part, I think the microchip decision addresses that very clearly, saying it's not enough just to say that activity was directed towards my customers and I may lose some customers' business because of that. The factors that the court used in microchip to distinguish that circumstance from Arrowhead, which is what Hydra primarily relies upon, I would submit to you are present here. Number one, no indemnification claim from any customers that would give rise to a belief in the part of Hydra that you're next. We've started with a customer, but you're next. There's no circumstance like that here. And also this point about competitors. What exactly is the competition here? What is the market? And Judge Mayer, your question focuses on this. I think it is helpful if you trace the progression of these complaints in the district court hearings, and I think what the court will see is this. It starts out in the original complaint and the first amended complaint, an allegation by Hydra that we are competitors in connections, but the patent covers drill pipe. The district court was rightly confused, and you'll see that reflected in the hearing transcripts. The district court pressed hard and said to Hydra, you are alleging that you are competitors with Grant Pride Co. on connections, but your antitrust claim is predicated on a market for drill pipe. I don't get it. There is a disconnect there. This prompted a request to replead and resulted in the second amended complaint, and in the second amended complaint, there's a breakout specifically of connectors and drill pipe, finished drill pipe as being two separate markets. But there's a basic problem here that still persists, and this is what links it to Michael Chip. Where exactly is the head-to-head competition here that has to be the grounding for an antitrust claim? It's not sales of finished drill pipe. Number one, that is being done abroad. It is being done by Hydro UK in the United Kingdom. It is being done where this patent does not reach. Geographically, it doesn't reach outside the United States. I thought that what your opponent said was that they are claiming that they were not a head-to-head competition, but they're a potential competitor. They would like to get into the domestic market, but they can't get into the domestic market because of this patent. That's their argument, is how I understand it. That's an argument that we're hearing today. I would direct the court to paragraph 51 at page 488 of the joint appendix. Paragraph 51 is the paragraph that I believe is being referenced in terms of a supposed intent to enter the market domestically based on sales abroad. I do not believe that paragraph 51 adequately alleges any intent to sell anything domestically. I'll leave it to the court's review of that paragraph for itself, but I don't think it alleges that which is being argued here today. Let me get back to the microchip case and the parallelism or not between the declaratory judgment jurisdictional line of cases and the Welker process line of cases. Mr. Hoss is arguing that that parallelism applies just fine with respect to the standard, but not with respect to the personae that are involved. I would like you to address a situation in which, for example, I sell lawnmowers and you sell lawnmowers. Let's set aside the different markets issue for now. I'm selling my lawnmowers to Home Depot and you, who have a patent on some aspects of lawnmowers, go to Home Depot and you threaten suit. And Home Depot says, we're not going to bother to buy any more lawnmowers from Bryson because this is just too much trouble. Do you think no matter how strong the merits of the Welker process claim in that situation, the court could not adjudicate it? I want to make sure I try to answer your question directly. Number one, if you are asking a Article III justiciable controversy type of question, I would make this point. I think, number one, Unitherm, to my reading, unequivocally adopts both prongs of the declaratory judgment standard and brings them into the Walker process claim. Reasonable apprehension of suit, make the device, or prepare to make the device. I don't think that's open to question. I don't know that, I don't believe Hydro is disputing it. But I'm trying to get at the customer aspect. Right, no, I understand. So I start out with the proposition that this is not jurisdictional. This is a matter of substantive law for 12b-6 purposes, which is what we moved under. So the question is then, our position is not that no customer-directed activity can ever be actionable. I don't think we've taken that position, and more importantly, in order to prevail, we don't need to take that position. I think the rubric that exists right now, looking at all the facts and circumstances, provides an answer to the hypothetical that you have raised. If there's a hypothetical that is closer to the arrowhead sort of circumstance, which raises the belief in the actual competitor, based on activity directed to the customer, but it raises the belief to the competitor that you're next. But suppose that what we have here is an absolute promise that I will never be sued, but Home Depot is not going to be so lucky, and the strategy adopted by the putative Walker process defendant is to go after Home Depot, and thereby achieve exactly the same result, which is to effectively monopolize the market. But you say still no cause of action? Or am I putting words in your mouth? I may be overruling your position. The approach that under microchip as applied in the Walker process context is going to take more than the circumstances you hypothesized. That may be a closer question, but I think you come back to the question of reasonable apprehension of suit. If reasonable apprehension of suit is part and parcel of a Walker process claim, and it is because it's all bound up in the question of enforcement, the notion that it is the enforcement of the patent that purportedly has been obtained by fraud that is the core of the cause of action, then you cannot divorce that claim from the Walker process claim from the prong that requires anticipation of suit. What other purpose could there be to sending the notice to the customer? You're talking about in the hypothetical or just in this case? Well, most of course. In this case, generally, I think that the letter serves a threshold information gathering process of trying to determine what's going on out in the circumstances there. I think that's a reasonable reading that comports with the district court's conclusion that this is not indicative of an intent or an impending lawsuit, an intent to file a suit. To gather information for what? I'm sorry? What is the purpose specifically? To gather information regarding what is going on out in the marketplace in terms of what's being used. If all they wanted to do was to gather information, why would they even refer to their patent? I'm sorry, I didn't hear the question. If all they wanted to do was to gather information about the market, why would they even refer to the patent? I think more precisely to gather information about whether activities in the market have a bearing upon the patent, which is not necessarily the same thing as saying that there has been a decision to pursue enforcement activity. Let me make sure I'm clear on this. Your position would be the same, I take it, if the letter had said, you quit making or selling this stuff or we'll sue you tomorrow. Your position, if I understand it correctly, is because that wasn't Hydril, Hydril has no remedy. No matter how aggressive the letter was and no matter how explicit it was in making a direct threat to the customers. Isn't that your position? My position would be as follows. If you have a circumstance that the letter is worded such that indicates that you're next, you Hydril are next. They said we're never going to sue Hydril, but we are going to sue you. I'm trying to tease out what your position is on this question of customer versus the principle. And I thought I understood you to say that as long as there's not something that constitutes a threat implied or expressed against the principle, then no matter what you say to the customers, you do not have an actionable Walker process claim. Now, is that correct? Am I, is it correct that that's your position? I want to refine that statement a little bit. Our position would be as follows. Number one, for purposes of this case, I don't think that there's any kind of a threat. Well, I understand. That's why I asked you a question. That's why the question is hypothetical. So we go on to the next stage. Let's hypothesize a more threatening letter. Let me give you a specific hypothetical. Suppose the patentee goes to several of my best customers and writes them a letter saying, unless you stop selling my product, we're going to sue you for infringement. Would that be enough for a Walker process claim? I think that if it creates a reasonable apprehension of suit in the competitor itself, then the answer to your question is yes. If it does not create that reasonable apprehension of suit in the competitor itself, then I think you're in a situation much more akin to microchip. And I guess what I'm envisioning is rather a spectrum that goes from. Well, before we get to the spectrum, let's go back. You were about to articulate your position in response to President Bryson's question. Would you do that? Yes. Our position is this. If the test is all the facts and circumstances, and if the standard is a reasonable apprehension of suit by the plaintiff, the party seeking to assert a Walker process claim, then I think that there has to be some fact or circumstance there that gives rise to an anticipation that you, the Walker process plaintiff, are next. If the hypothesis is that that's not going to happen, then I think it is not possible to reconcile a Walker process claim based on that theory with the requirement, which I do not believe is disputed. I cannot reconcile your statement that the Hydro, in this case, had a feel that it was next with your answer to me that if they told three of their, they told several of their major customers that they were going to be sued if they didn't stop handling the problem. I thought you told me that would be enough to show a Walker process claim, suppose I said to this customer, we want to make one thing clear, you can tell your company, we have no intention of suing the company that makes this product. All we're going to do is we're going to sue you and we're going to make it hot for you. And if we get word that within one week you haven't stopped selling this product, we've instructed our attorneys to file suits against you the first day. Now, there's no threat in that situation that they're going to sue the manufacturer, but I thought you told me a minute or two ago that you would acknowledge that that would be a valid Walker process claim. To make sure that I'm not misstating myself, and I see that my light is on, may I finish answering your question? To make sure that I'm articulating our position clearly, I think that it is grounded on the requirement of anticipation of suit by the Walker process plaintiff itself. And if the hypothetical… Suit against the Walker process plaintiff. So there has to be, it has to be conduct that would indicate to the Walker process plaintiff that it would be sued. And in words of Arrowhead, that you're next. Even though, as a practical matter, if they threatened every customer, they could wipe out its business, right? Because of the key to the Walker process claim, as I understand it, being predicated on enforcement directed to the competitor. That's what it's got to be grounded in. All right, thank you. Mr. Price? I'll give you an extra minute or two. I think it'll be right over. I'd like to point out a couple of things I thought were interesting in the response. First, Mr. Price referred to a reasonable reading of the letter and deciding that the letter was an information gathering process and was not a threat. Keep in mind that we're here on a dismissal on the pleadings. Reasonable readings is not what this is about. This is about every inference being drawn in Heidel's favor. The commercial realities of this letter could easily reflect when we go into discovery that these companies had every reason to believe that this letter was going to result in a lawsuit. The letter didn't propose a license. The letter was to both the distributor and the customer. It was only for information gathering reasons. Why would you send it to both the distributor and the customer? And why would you seek to identify a particular transaction rather than a particular product? These two entities had a reasonable belief that this letter was seeking to shut down that transaction. It was a letter received from outside intellectual property counsel, and it was a letter identifying a specific patent. And with all of the inferences drawn in Heidel's favor, that should be enough to show that Atwood Oceanics or Omscope had a reasonable apprehension of suit. Now, on the question of whether that's enough or whether Heidel needed to have a reasonable apprehension of suit, we believe that Grant Pico is just going too far in reading the Unitherm standard, and that results in the ridiculous situations that have been discussed in the questions. The Unitherm says you apply the standard. The standard is reasonable apprehension of suit for commercial activity or planned commercial activity with concrete steps. The standard is not the persons to whom the standard is applied. And if you look at Unitherm, Unitherm 1 never says that it's enforcement against the plaintiff. It just says it's enforcement or attempts at enforcement. Secondly, Unitherm itself had not received a letter. If you look at page 944 of the Unitherm case, I'm sorry, page 1345 of the Unitherm case, you'll see that Unitherm never received a letter, and yet the court found that there was sufficient enforcement, looking at the letters that were going to customers and the letters going to other competitors. Finally, Unitherm broke between the question of what was federal circuit law and what was regional circuit law. On the federal circuit law side is the breaching of the immunity that is gained from antitrust when you have a patent. And there are two elements. The first element is the fraudulent conduct in front of the patent office. And the second element is the enforcement activities. On the regional circuit law side, they put the plaintiff standing. Now, if the federal circuit in Unitherm had indeed, if this court had intended to have the enforcement be a plaintiff-specific question, why would they put the plaintiff standing under the regional circuit law? The plaintiff standing, in this case, should be decided under the fifth circuit's law, not under the federal circuit's law. Once, under the federal circuit's law, we've determined that Grant-Fico has lost its immunity through its enforcement actions, whether those enforcement actions were against Hydro specifically or against Hydro's customers, such as Atwood Ocean Mines. Finally, with respect to the microchip case, the microchip case is applicable if the standard is, does Hydro have a reasonable apprehension of suit? Because then we'd have all this whole question of the seller and the buyer, and do the threats against the buyer lead to enough apprehension in the seller? But if it's true that Unitherm is merely setting forth the standard, while antitrust law provided that anyone for whom that standard is met could cause a problem in the market, then microchip doesn't cause a problem for this case, because microchip could then be applied to Atwood Oceanics, and there's no question that Atwood Oceanics and its own conduct was at issue here. There's no customer involved in that situation. Finally, taking advantage of my extra minute. No, you'll use your extra minute. Thank you very much. The case is submitted. Okay. The Honorable Court's adjournment is made today.